[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 11073
This Presentment of Attorney for Misconduct was submitted, in part, on the following Joint Stipulation of Facts:
1. Respondent J. William Gagne was admitted to the bar of the courts of the State of Connecticut in 1971.
2. He has also been admitted to the bars of the United States District Court for the District of Connecticut, the United States Courts of Appeals for the First and Second Circuits, and the United States Supreme Court.
3. Mr. Gagne's specialty and area of expertise is labor law, particularly the representation of unions.
4. With the exception of the contempt finding associated with the events leading to this presentment and this presentment itself, Mr. Gagne has never been subject to disciplinary action of any kind by any grievance committee or court anywhere in the country.
5. In approximately January 1990, the President of the International United Brotherhood of Carpenters and Joiners of America ordered Local 48 of Fitchburg, Massachusetts to merge into Local 107 of Worcester, Massachusetts.
6. Also in approximately January 1990, Mr. Gagne was contacted by representatives of Local 48 and asked to fight the merger.
7. Mr. Gagne agreed to represent Local 48.
8. Complainant Steven Flynn is a representative of the President of the International and was not a member of Local 48 at any time during Mr. Gagne's representation of Local 48.
9. None of the officers or members of Local 48 have even protested or complained about Mr. Gagne's representation.
10. Mr. Flynn filed the grievance that has led to this presentment on February 19, 1993. CT Page 11074
11. During Mr. Gagne's initial meeting with representatives of Local 48, on or about January 8, 1990, Mr. Gagne agreed to charge Local 48 at an hourly billing rate of $125.00. Representatives of Local 48 understood and agreed to this fee rate.
12. Mr. Gagne commenced work shortly thereafter.
13. On or about January 15, 1990, Local 48 gave Mr. Gagne a check in the amount of $20,000 towards his fees. Mr. Gagne was asked not to deposit the check at that time, however, because Local 48 required time to transfer funds to cover the check.
14. Mr. Gagne therefore held onto the check and did not deposit it at that time.
15. By February 21, 1990, according to his billings, which were non-sequential, Mr. Gagne had incurred 169.35 hours on the case resulting in legal fees at the agreed rate of $125 per hour equalling $21,168.75.
16. On February 21, 1990, the $20,000 check was deposited in Mr. Gagne's office account leaving a balance due Mr. Gagne of $1,168.75, according to his records.
17. Shortly after February 21, 1990, the check, which was endorsed "Gagne Collins Office Account," was paid by the bank and returned to Local 48.
18. Between February 21, 1990 and March 31, 1990, Mr. Gagne incurred additional hours on the case. Accordingly, he requested further payment.
19. During the month of April 1990, Local 48 gave Mr. Gagne three additional checks totalling $75,000, which Mr. Gagne deposited in his client trust fund account.
20. The merger order was appealed to the International's Executive Board in Washington, D.C. Mr. Gagne and officers of Local 48 sought to persuade the International not to proceed with the merger. Following the trip to Washington, D.C., Local 48 began to grow concerned about the significant costs of continuing to fight the merger. CT Page 11075
21. In April 1990, Mr. Gagne spoke with Roger Vautour, a representative of Local 48, about his fees. Mr. Gagne agreed to cap his fees and to see the representation through to completion for no more than the $95,000 that Local 48 had previously paid to Mr. Gagne.
22. Mr. Gagne thereafter continued to work on the case and to maintain his hourly billing.
23. By May 1, 1990, Mr. Gagne had filed suit on behalf of Local 48 in the United States District Court for the District of Massachusetts.
24. By May 2, 1990, according to his billings, Mr. Gagne's fees on the case, at the agreed upon rate of $125 per hour, plus expenses were $64,485.81. His total hours on the case were 508.2.
25. On May 2, 1990, Mr. Gagne directed his office manager to transfer $40,150 from Mr. Gagne's client trust fund account to his office account. After the transfer was accomplished, a balance of $34,850 related to Local 48 remained in Mr. Gagne's trust fund account.
26. The $40,150 transfer itself as an attorney's fee is not at issue before this Court.
27. Also on May 3, 1990, Mr. Gagne attended an emergency conference on behalf of Local 48 in federal district court in Boston, Massachusetts, before Judge William Young. The International was seeking a temporary restraining order or preliminary injunction, enjoining Local 48 from spending funds.
28. During the course of the conference, the parties stipulated on the record that Local 48 "would spend no further funds for attorneys' fees other than what's been spent."
29. Thereafter, during the month of May, Judge Young heard oral argument on the International's motion for summary judgment, granting the motion.
30. On June 7, 1990, Judge Young entered a permanent injunction against Local 48, which included the following provision: CT Page 11076
 Plaintiffs Local 48, Vautour, Leger, Johnson, Talbert, Autula, Bron, their representatives, agents, attorneys, and employees are permanently enjoined from expending or dissipating any funds or assets of the former Local Union No. 48 including, but not limited to, all funds of the former Local Union No. 48 held by any bank or other financial institution and also including, but not limited to, the use of such funds for the payment of plaintiffs' attorneys' fees in this action. . . .
31. Mr. Gagne commenced an appeal in the United States Court of Appeals for the First Circuit on behalf of Local 48.
32. After May 1, 1990, Mr. Gagne continued to incur additional time on the case, substantially in excess of the time necessary to exhaust the remaining funds that had been paid by Local 48, according to his records. Mr. Gagne's work on the case after the summary judgment entered by Judge Young on May 18, 1990 included the preparation of appeal papers, the preparation and filing of appeal briefs, obtaining a stay order from the Court of Appeals and argument of the appeal on November 7, 1990.
33. At various intervals during the remainder of 1990, after continued work on the case, Mr. Gagne transferred amounts from his client trust fund account to his office account based upon time, according to his records, accrued at the rate of $125 per hour plus expenses. He transferred such additional amounts as follows: August 24, 1990 — $1500; August 31, 1990 — $17,000; September 14, 1990 — $10,000; October 15, 1990 — $676.08; and October 26, 1990 — $5673.92.
34. Although Mr. Gagne continued to work on the case after the funds that had been paid in April 1990 by Local 48 were exhausted according to his records, Mr. Gagne received no additional payment from Local 48.
35. By decision dated December 7, 1990, Local 48 lost its appeal in the First Circuit. Local 48 and Local 107 were merged. CT Page 11077
36. The international thereafter claimed an entitlement to the return of approximately $35,000 in fees.
37. On May 8, 1992, the International initiated contempt proceedings in Massachusetts related to the $34,850 transferred to Mr. Gagne's office account during the latter half of 1990, as well as the $40,150 transferred in May 1990.
38. The entire transcript of the contempt hearing before Judge Young on November 20, 1992 is attached hereto as an exhibit.
39. During the contempt hearing before Judge Young on the afternoon of November 20, 1992, a Friday, in open court, Mr. Gagne, through his attorney, agreed to return the $34,850.
40. Judge Young declined to issue any order with respect to the $40,150, but ordered the $34,850 returned by the next Monday. Although Mr. Gagne's lawyer indicated that he did not believe Mr. Gagne could accomplish that in a weekend, the $34,850 was, in fact, tendered to the International on Monday, November 23, 1992 and repaid in full.
41. Also on November 20, 1992, Judge Young found Mr. Gagne in contempt of court regarding the $34,850 his lawyer indicated Mr. Gagne could not pay by Monday.
42. Although the Court later found that Mr. Gagne purged the contempt, it let the contempt finding stand
It is noteworthy that the underlying fee dispute is not between respondent and his client, Local 48, but with the International United Brotherhood of Carpenters and Joiners of America which was an adversary of Local 48 during the transaction and litigation for which the fees in question were charged. The International has an interest because the assets of Local 48 were eventually merged into those of Local 107 after favorable court rulings. The International thus was interested in preserving the pre-merger assets of Local 48.
The fee arrangement between Local 48 and respondent was not as clear as it could have been and the time records justifying the charges are somewhat sloppy. Likewise, the unwritten "fee agreement" is unclear.[1] But in the absence of CT Page 11078 any testimony from the client the court cannot determine if in fact there was or was not a meeting of the minds between the attorney and the client as to the basis of the bills and charges in question.
Although petitioner has presented evidence which calls into question the respondent's conduct on the various billing activities — including the retainer, charges, transfers, and deposits — the petitioner has not sustained its burden of proving a violation of Rule 1.5(b) of the Rules of Professional Conduct or Rule 27 A of the Practice Book by clear and convincing evidence.
Petitioner further claims that respondent violated Rule 8.4(d) of the Rules of Professional Conduct by violating a court order. During the relevant time frame, Rule 8.4(d) provided that "It is professional misconduct for a lawyer to: (d) Engage in conduct that is prejudicial to the administration of justice."
Respondent was declared in civil contempt by Judge William J. Young of United States District Court, District of Massachusetts for a violation of an order of that court. Petitioner later purged the contempt, and it was so found, but the court let the contempt finding stand. Respondent makes much of claimed ambiguities in the wording of the injunction and confusion in the proceeding before Judge Young. While there is something to be said for this argument; nevertheless, the contempt ruling stands and it must be dealt with.
It is hereby found that respondent knowingly disobeyed an injunction of the United States District Court in transferring $34,850 from his client trust account and that this was an ethical violation of Rule 8.4(d).
Respondent argues that if a violation is found that a reprimand suffices as a sanction but petitioner requests a period of suspension and restitution of $14,000 to the International which is the amount of the legal fees it expended to effectuate the eventual return of the amount improperly transferred.
In determining an appropriate sanction aggravating and mitigating factors should be weighed. Aggravating factors are found to be that the act was knowing rather than negligent and CT Page 11079 that respondent stood to gain from the transaction. Also, he was an attorney of considerable experience at the time, and the International had to resort to legal action for the return of the money.
In mitigation is the fact that respondent appears to have put in sufficient hours of work to have earned the money and, although improper, the transfer did not result in a windfall. The respondent has no prior disciplinary record and the petitioner admits that the respondent had a cooperative attitude toward the disciplinary proceedings and working within that process.
The respondent is suspended from the practice of law for a period of fifteen days commencing on November 1, 1995 and terminating on November 15, 1995, at which time he is to be reinstated without the necessity of further proceedings. The request for restitution for attorneys' fees incurred by the International is denied.
John J. Langenbach Superior Court Judge